and Mr. Patrick, good to have you today sir. Thank you, your honor. I'm Michael Patrick from Chapel Hill, North Carolina. I represent Jatia Barrett. This case does not involve North Carolina law like the first case or West Virginia law, but it does involve only federal law and it shows the federal system is entirely capable of making a thorny problem all on its own without involving any state law. The core issue is whether or not Mr. Barrett, who was sentenced twice in the Middle District of North Carolina for crack cocaine charges. Different offenses. He was sentenced twice for separate offenses. For separate offenses, yes sir. One of which, one of the sentencing occurs before the Fair Sentencing Act became effective, one after, and then he applied for relief. Well, after that he then... And both of them were 200 months? 200 months to run concurrent. 200 months to run concurrently. Once, first in 2008 and second in 2010. Yes, and I called them that 2008 and 2010 cases for sake of clarity. Both of all of the offense conduct occurred in 2008. And he was in custody on the first offense for about 14 months before he got sentenced, and then 10 days later he got indicted on the second one. He's never been out of custody. Then was a reduction after that. And then he testified against the co-defendant in the second trial. You got cooperation. And the big reduction? He did a very good job in that case. And there was a reduction to a hundred months? To a hundred months. Was that on both sentences? On both sentences to run concurrent. That occurred in 2011. So there's a third sentencing here in 2011 that knocked it all down to a hundred months. Right. And then... Concurrent. Concurrent. Then the 3582 motion... So sentences, they run concurrent. There's no partial concurrent. They run the exact date to exact date. Well, that's a troubling matter, and it's reflected in the second sentence by Judge Osteen. I mean, it was two different judges. Now, the one that reduced him was just Judge Osteen, or did Judge Schroeder have to get into that, too? It was . . . they both agreed, I think, on the reduction. And then under the procedures in the Middle District, Judge Osteen took over the 3582 motion, and he's the only one that acted on that. Right. But the reduction to a hundred months, did Judge Schroeder have to enter an order reducing his to a hundred months, and then Judge . . . I believe that they both did, Your Honor. So there were . . . so each sentence was reduced to a hundred months. Yes, sir. Then he filed the 3582, saying I should have gotten the benefit of the Fair Sentencing Act. Right. Now, to get back to Judge Shedd's question about, oh, do they run exactly . . . there was a debate about that, because the way the Bureau of Prisons calculates things is never clear to probation or to the trial bar, and there was a discussion at page . . . Joint Appendix 124 at the second sentencing in front of Judge Osteen, whether or not that was going to run concurrent, because at that time, he was in federal custody for 20 months, which he was going to get credit for on the 2008 case, but it was not at all clear he'd get it on the 2010, although Judge Osteen wanted him to. I haven't been able to determine the date to date whether or not that's the way the BOP is going to do it. Is there any provision to run . . . I'm just thinking about this, to run concurrent when the dates don't match up perfectly, don't have the same starting date? Well, that was a problem, and that's why I ask at the 2010 . . . I don't want to belabor this too much. Do you know the answer to that? No, sir. Can you have concurrent sentences that do anything other than start at the same date for credits purposes? I don't know the answer to that. Okay. Thank you. Ultimately, on the 3582 question, it boiled down to whether the career offender was eligible for sentencing. The probation, when those came up, it took the position that career offender was not. Mr. Barrett, through me, filed a thing. At that point, we recognized the FSA was about to come into play, or might come into play. He said, well, if it did, he really as a defect of the FSA would get a lesser career offender thing, and I explained that in the brief. In our brief, our initial brief, we cited U.S. v. Munn as an argument why the general rule that career offenders cannot take advantage of the 3582 resentencing should not apply because both district judges, in their original sentences, we said the career offender overrepresented his criminal history. We made an argument for that. Judge Schroeder was pondering with that and ultimately gave a variant sentence down and said, yeah, the career offender would be too much, and then came up with a lot of rationale. These 200-month sentences were both below the guidelines. That's right. They were both variant sentences. Judge Schroeder was troubled by how much . . . if he hadn't been a career offender, he would have been below the statutory minimum. He would have been down around eight or nine years, but the career offender application pumped him way up over 20 years. Judge Schroeder had trouble with that, and then Judge Dosteen, seven or eight months later, also had trouble with that. Judge Schroeder gave him a variant sentence, and Judge Dosteen, recognizing that if the government had gotten . . . because of the way the drug quantities work, he would have gotten exactly the same sentence. They were trying to make sense of all of this. Our view is that Munn's exception to this § 3282 not being applicable to career offenders really ought to be at play. Now, the government has pointed out the later changes, and we acknowledge that the Sentencing Commission changed the language after Munn in 1B1.10 that tried to tighten up the eligibility of that. I can't really argue that that's not the case, but it's clearly they didn't like the line of case law that the Fourth Circuit was aligned with, as is some of the others. Now, we've tried to make an argument in the brief, and this really tracked the argument that was in the ancillary arguments in U.S. v. Black about there are some constitutional . . . other reasons after Dorsey that the Fair Sentencing Act should apply to people  . . . Now, one of these sentences was pre-Dorsey and one was post-Dorsey? That's right. It's one of the other complications in this particular case, Your Honor. So we got both. We got the same guy with concurrent sentences, one sentence before and one sentence after. So Black certainly takes care of the 2008 aspect of this thing? Well, you know, I know you concurred in Black, Your Honor, and you basically said you thought that the case law in the Fourth Circuit was . . . compelled the result, but you didn't like it very much. Well, that's the law. We've got to apply . . . That's the law, and you said you hoped that Blewett would go up out of the Sixth Circuit, which Blewett was a very interesting case. What's the answer? Where does the . . . Well, I think the only way I can . . . Let me ask the question again. I'm sorry, Your Honor. Do you still argue about the 2008 sentence in light of Black? The only way I could distinguish . . . I didn't say the only way. I said do you still argue it? Do you still argue that that issue is a current issue before us, the 2008 sentencing? The only way I could distinguish that is . . . And that's it. Do you still argue that? Yes, sir. The way I would argue it is that Black concerned the statutory mandatory minimum. Barrett was not affected in any of his sentences by either the statutory minimum at all. And so Black is not exactly on . . . If Black does control the 2008 sentencing, then you'd lose that because of Black. Yeah, in the Fourth Circuit. We don't withdraw any issues, but we would acknowledge that if Black controls, we . . . I know that, but I said if that. Then why is the other claim even addressable? There's no redressability then, is there? If it's concurrent and he's going to serve 100 months, that's what I ask you about the timing. If the sentence is exactly the same day for day from the starting date, then if 2008 . . . Dismiss the 2010 sentencing question. Not harm us there or just dismiss it. Your Honor, I don't think that anyone can answer the question as a practical matter whether it runs exactly. Well, I said if. I said if. If . . . It would be a moot point. I mean, it would make no . . . The 2010 sentence would be moot? Well, it would be moot in the sense that he would gain no benefit from any relief on the 2010. But he still got the 100 months on the other. But in a legal sense, technically it wouldn't be moot. It would be dismissed for not being redressable, wouldn't it? Do you understand my question? Yes, sir. Because if we can't do anything about it, why would we even entertain it? Well, unfortunately, you know, there's a possibility that he will reach the end of the 100-month sentence on the 2008 conviction. And then the BOP says, well, you don't get credit for that 20 months before you got sentenced. You have another 20 months to run on this. Yeah, and then he's got 24 months of a supervised release violation on top of that, that neither of these run concurrent. But the fact of the possibility of what they do, we don't base our jurisdiction on a potential remedy on what they might or might not do, do we? We would look at what we see as the sentencing order is, and if they match up day for day, what the Bureau of Prisons does with that later, that isn't any issue that would be before us at this point on what they might do, is it? We don't do that. We don't guess at what the Bureau of Prisons might do and then give a remedy based on if they might do that. Well, that would then throw him into a situation of having to file, I guess, a 2255 motion at that point. That or maybe claiming at some later point the condition then makes his appeal addressable, and it wasn't addressable until then. But do you agree with what I'm saying, or you don't agree with that? It probably caused you concern to agree with it, but do you understand the question of addressability? The government doesn't really talk about that either. They call it harmless error, but I'm going to ask him the same question. The reason I probably don't agree with it is going all the way back to his sentencing in 2010, we recognized it to be a problem, and nobody knew how to deal with it then. And now you're telling me to just wash it over at this point. Let me tell you a legal maxim that we used in the last case, maybe you ain't seen nothing yet. You said it's kind of messed up. We have to resolve that. Well, there's one other reason that I raised, I think in my supplemental brief, after you asked us to address whether Black took care of this case. And then part of Black was talking about 3582 as not being a new sentencing for purposes of getting beyond the effective date of the FSA and to bring Dorsey into full effect. Well, you know, we have a little bit, and we're not suggesting that in this case, but we have a situation in this case where the sentence we're really asking to be modified are sentences from post-FSA, post-August 3, 2010, because the sentences we're asking to have the chance to modify are the ones imposed in 2011 after the Rule 35 reduction motion was filed. So that is something that takes us a bit out of the Black scenario. And frankly, I don't know, and I haven't found a case that would really speak to, you know, whether that makes a difference under Dorsey or not, whether that takes us into the post-FSA era or not. I just don't think there's any case law on that, but it certainly distinguishes this situation from Black, which was he got sentenced in 2007, way before the FSA, and then he files his 3582, and he's asking for the 2000 sentence, 2007 sentence. And this court said that just the mere filing of 3582 doesn't take you into the new era. What we've got here is one of the two cases where he clearly should have been entitled to the FSA, because the second one was sentenced after August 3, 2010. But we have both sentences, both from the 2008 cases and the 2010 cases, that actually the sentences we're talking about today trying to modify and the motions that were filed to modify were imposed in 2010. I'm sorry, 2011, well after the effective date. I don't have any authority, because this is just an unusual, you know, factual pattern to bring up to you. I don't have any authority on that, but I think that distinguishes it somewhat from what was in Black and what were in the other cases. If you all have any other questions, I think I've reserved a few minutes, but if you have any other questions, I'll just close at this point. Thank you. Thank you, Mr. Barrett. Mr. Patrick, I'm sorry. Thank you. Mr. Hamilton. Yes, sir. May it please the Court, Your Honor. My name is Robert Hamilton. I'm representing the United States in this case. Your Honor, a couple of points I'd like to make. First of all is that just as Black discussed the FSA and 3582, it's our belief that 3582 is not a proper vehicle to raise any FSA claim. 3582 is, of course, limited to sentencing guideline changes by the Sentencing Commission, whereas the FSA, of course, is statutory changes to the law made by Congress. The second thing I would like to stress to the Court is that, and the Court's already discussed it, because these sentences are concurrent, and it appears obviously that, not obviously, but it does appear that Dorsey is not going to affect the 2008 conviction because it was pre-Dorsey, that that 2008 conviction and sentence is going to stand. But the sentence was in 2011. The sentence, Your Honor? The sentence he has right now on the 2008 conviction and the 2010 conviction were both imposed in 2011. No, Your Honor. Well, they got 200 months. Okay, I'm sorry, Your Honor. And then it was reduced to 100. Okay, you're referring to the Rule 35 motion by the government. The sentence he has today was imposed in 2011. And so I think that it was the Court asking whether or not a Rule 35 motion is a resentencing, which would qualify for Dorsey, and I don't believe there's any authority to indicate that it would be. Would it be found a new furrow there? I believe it would, yes, Your Honor. And I don't believe that's even been raised by the appellant. I think certainly Black raised whether or not a 3582 would constitute a new sentencing, but I'm not aware of it being raised by the appellant in this case or any cases that have said that a Rule 35 motion by the government and a subsequent order by the Court would somehow bring someone as a new, complete new sentencing. That's another sentence. I mean, he had 200 months and then he got 100. That's a big reduction. It is a reduction. And it certainly is modifying the sentence. Now, it doesn't modify perhaps the rest of the sentence. It doesn't address supervised release. It doesn't address forfeitures and things like that. But the point that's very important, I think, in this case, Your Honor, is in addition to these concurrent sentences, which would effectively make it no change, this 2010 conviction could go away and he's still going to be doing the 100 months. But the other thing that's very important is that the defendant has already received the benefit of the guidelines that he would have had under the Fair Sentencing Act. Let me stop you and ask for a second. Do you know, are they concurrent on the record? I'll just look back through it quickly and couldn't get an answer that satisfies me on this. Were both these sentences, the 2008 and 2010, were they both, did the accounting for each of those start on the exact same date? And the judgment doesn't indicate that, Your Honor. The judgment just strictly says it's 200 months concurrent, supervisory release is current, everything is straight up concurrent. Is there any way that you know of that concurrent is anything other than going back to the same date? I'm not aware of any other way to calculate it, Judge. Just if you say concurrent, the Bureau of Prisons would let the first sentence run and then impose the second. And if it's concurrent, as far as you know, and everything you've seen, they just go back and get concurrent as to the starting date as long as they run. That's how I believe the Bureau of Prisons would calculate it, Your Honor. But the second point, and I put this in my brief, is that if the Fair Sentencing Act guidelines or rules... Let me stop you for a second. That being the case, is any claim on the 2010 reduction sentence or anything, is that even redressable by this court? I think it's redressable, but I think it certainly would not make a difference. Then why is it redressable? Is anything we're going to do make a difference? It's not going to make a difference. Then how is it redressable if we can't grant any relief or make any difference? How is that redressable? And that is exactly what we've argued in our brief. No, you argued it was harmless. That's the difference in saying harmless, if you're correct, we would affirm it just for what it's worth and non-redressable would just be dismissed, wouldn't it? I don't know that we'd want to dismiss a separate conviction or judgment. It would be dismissed the appeal on that issue. Yes, I'm sorry, yes. Because, exactly, it would have absolutely no effect. But you're saying two different things. If it's non-redressable, we would handle that if the panel thought that we should be void of that appeal issue. That would be dismissed, wouldn't it? Dismissed for non-redressability. Sort of like standing. Yes, it could be. Is that different than what you said? It's not reachable under 3582. It is not. 3582 is not the proper vehicle to contest the FSA or try to apply a statutory change. Why would it be dismissed under 3582? Well, as part of dismissing the appeal as not being appropriate under 3582, if 3582 is not the proper vehicle, I don't know that the court even has to get to the next step as to looking on the merits of it. But you're arguing, because you do argue the merits and the alternative and say, you don't argue non-redressability. You argue that if you look at the merits of it, that you don't think he's harmed by it because he's going to serve 100 months anyway. But you say if we were to look at the merits, you would still win on the merits because of the way the court sentenced him. They de facto gave him the benefit of that guideline change. They actually very downward to the exact, the court, both district courts used an offense level of 31 with a criminal history of 6, which is 188 to 235 months. And they sentenced him within 200 months within that new range that they found. If we apply the Fair Sentencing Act to the amount of drugs, 52 grams, we would arrive at the same place. It's similar, I think, to a case which I cited in my brief, the Dean case, which is an unpublished opinion in this circuit, where this court said basically in a case, I think it was involving a bank robbery, but because of the downward variance by the sentencing court, the Fourth Circuit said there's no reason for us to look at anything because it's just not going to make a difference. It's not going to have an effect. So that, which we would argue, is he's already received the benefit of anything he would have gotten under the FSA. It's a concurrent and furthermore, the 3582 is just not an appropriate vehicle to bring this before the court when he's alleging a Fair Sentencing Act violation. Thank you, Your Honor. Mr. Patrick? I'll make two or three quick points. It was suggested we hadn't raised the issue about the 2011. We actually raised that in our supplemental brief because we were having to address the black decision. And we specifically raised the 2011 as an alternative to that. The issue on concurrency and whether it makes a difference, that was something that I was troubled by. We talked about it in the second sentence, and it's in the Joint Appendix at page 124, and we were talking about that. I told the court that, and I talked to probation, they told me that they didn't think he was going to get any credit for the 20 months on the second sentence. Ms. Harrison, the assistant U.S. attorney, said she thought I was right about that. And then the court asked the probation officer, Ms. Thompson, about that, and she said, well, I can't get to the bottom of that. The BOP's manual is 400 pages long. I think it's not likely. And then the judge said, well, I'm going to try and tell them to do a fully concurrent sentence. This is in the transcript. Is this Judge Osteen? This is Judge Osteen in the second sentence. I want to make it fully concurrent, but then when you actually, and I'm going to order them to do it 200 for 200, but when he actually did his judgment, that's not what the language of the judgment says. It doesn't talk about that. It just says count one to run concurrently with the sentence in the 08 case. So that is an issue that's never really been resolved, and it's always trouble. Did anybody in the transcript add another note, just say we'll let the Fourth Circuit resolve it? No, sir. There was no appeal from the original staff. So, on the point on have we received the benefit of the FSA, and that's what the last point they were trying to make. You know, you're really, at sentencing, you start with the guidelines as an anchor, and then you're arguing why if your defendant should go down below that, and we would have had a different anchor in the original sentences and later sentences if the FSA had been applicable. We wouldn't have been starting that high. We would have been starting substantially lower, five, six, seven years lower, and the judges in both cases but the career offender thing would have still pumped him up, and so we would have been starting from a different anchor and trying to argue down lower. I think the government's trying to say we can predict what the district judges would have done in that situation. I don't think you can, and that's why I think relief would be appropriate. So, if there's no other questions, I'll just sit down. Thank you very much. Thank you, Mr. Patrick.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker